NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LIGHTHOUSE POINT MARINA &
YACHT CLUB, LLC,

               Plaintiff,

v.

INTERNATIONAL MARINE
UNDERWRITERS,

               Defendant.

**OPINION**

Civ. No. 14-2974 (WHW)(CLW)

**Walls, Senior District Judge**

    Plaintiff brought this action against its insurer, seeking payment for alleged wind and water damage to residential property during Hurricane Sandy. Defendant alleged that the lawsuit was fraudulent. The Court dismissed the action and ordered Plaintiff to show cause why the Court should not impose sanctions for filing a complaint that lacked factual basis. Plaintiff did not respond, despite timely receiving the order through ECF and by certified mail. The Court now imposes sanctions.

**FACTUAL AND PROCEDURAL BACKGROUND**

    This was one of more than 250 actions brought in New Jersey courts by Plaintiff's attorneys, a Texas firm working with local counsel, against insurers to recover for alleged property damage caused by Hurricane Sandy. The complaints bear the signature of Audwin Levasseur, Esq., and an illegible signature under the typed name of the Voss Law Firm, P.C., along with the names Bill L. Voss, Scott G. Hunziker, and The Voss Law Center. *See* Compl. 7,

1

**NOT FOR PUBLICATION**

ECF No. 1-1. The original complaints are nearly identical, including typos. *Compare, e.g.,* Compl. ¶ 4, ECF No. 1-1 *with* Compl. ¶ 4, ECF No. 1-2, *Aquarian Condo Assoc. v. Scottsdale Ins. Co.*, 2:14-cv-02822-SDW-SCM (D.N.J. 2014) (both filed on the same day, both stating, "[t]hrough it [sic] insurance policy, Plaintiff was objectively insured for the subject loss by Defendants [sic]"). Plaintiff's First Amended Complaint corrected the typos and updated Defendant's name and address, but did not add factual details apart from the policy number. Compl., ECF No. 1-1. The amended complaint alleged that Defendant did not pay Plaintiff the benefit owed for "extreme external and internal damages, as well as other wind-related losses" to property at 1 Crabbe Road, Toms River, New Jersey, but did not specify the value or nature of the damages. *Id.* ¶¶ 2, 11-12. The amended complaint changed the description of the property from commercial to residential. *Id.* ¶ 2. Plaintiff further alleged that Defendant acted in bad faith by failing to conduct a reasonable investigation into the "denial or underpayment." *Id.* ¶ 14.

In response, Defendant asserted that it had already sufficiently compensated Plaintiff for its losses. Defendant issued a policy to Plaintiff for the period from July 18, 2012 through July 18, 2013, which was for commercial property, not residential. Decl. of Mark L. Antin in Supp. of Def.'s Mot. to Dismiss ("Antin Decl. MTD") ¶ 5, Ex. A. The storm hit on or about October 29, 2012. Compl. ¶ 4. On November 7, 2012, Plaintiff sent Defendant a Property Loss Notice alleging "wind damage to buildings." Antin Decl. MTD ¶ 6, Ex. B. An adjuster inspected Plaintiff's property on December 4, 2012. Antin Decl. MTD ¶ 7, Ex. C. The inspection report found wind damage to two fences, and "[n]o damage to any of the 4 buildings." *Id.* It valued the claim at $1,612.00, and recommended a payment of $612.00, after applying a $1,000 deductible. *Id.* Defense counsel's declaration asserted that Defendant paid Plaintiff $612.00, *id.* ¶ 8, though counsel did not submit evidence of the payment. Notwithstanding this appraisal, in June of 2013,

**NOT FOR PUBLICATION**

Plaintiff's counsel wrote Defendant demanding $540,000 to pay for the wind damage, and an additional $135,000 in attorney's fees. Compl. 22. Plaintiff filed the original complaint in New Jersey Superior Court on October 23, 2013, filed the amended complaint on April 3, 2014, and Defendant removed the case to this Court on May 9, 2014. Notice of Removal, ECF No. 1.

The policy at issue requires that the insured allow the insurer to inspect the property "[a]s often as may be reasonably required." Antin Decl. MTD ¶ 11, Ex. A. § E(3)(6). It also requires the insured to fully comply with its terms before commencing legal action. Antin Decl. MTD ¶ 12 Ex. A (D)(1). Defendant made multiple requests to reinspect the property after receiving the demand letter from Plaintiff's counsel. Antin Decl. MTD ¶¶ 13-16, Ex. D. Plaintiff never responded to these requests. *Id.* ¶ 15. The parties entered into a Joint Discovery Plan for the litigation, ordered by Magistrate Judge Waldor on July 28, 2014, under which Plaintiff was required to make the property available for inspection before August 15, 2014. Joint Discovery Plan, ECF No. 8. When Plaintiff did not allow an inspection even after entering into the Joint Discovery Plan, Defendant requested the Court's guidance. Antin Decl. MTD ¶¶ 19-20. The Court held a conference call and instructed Plaintiff that any further avoidance of an inspection would put the case at risk of dismissal. *Id.* Since then, Defendant made frequent requests to reinspect the property, but Plaintiff denied or ignored them. *Id.* ¶¶ 21-22.

Defendant moved to dismiss on September 11, 2014. Mot. to Dismiss, ECF No. 13. Attached to the motion are five separate letters from an insurance adjuster to Plaintiff's counsel, over the course of six months, requesting an opportunity to inspect the property on behalf of Defendant. *Id.* Ex. D. The letters detail the multiple ways the adjuster attempted to communicate with Plaintiff's counsel, including by certified letter, fax, email, and phone. *Id.* Ex. D-E. The adjuster left messages on Plaintiff's counsel's voicemail and with an administrative assistant. *Id.*

3

**NOT FOR PUBLICATION**

Plaintiff did not respond to the adjuster's requests or to Defendant's motion, and did not submit any evidence to counter Defendant's assertions of fraud, Answer ¶ 27, ECF No. 3, accord and satisfaction, *id.* ¶ 22, or failure to comply with contractual obligations. *Id.* ¶ 20. The Court granted the motion on November 13, 2014, finding that the case deserved dismissal under *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). ECF Nos. 15-16.

The same day, the Court ordered Plaintiff to show cause why the Court should not impose sanctions under Fed. R. Civ. P. 11(c)(3) for filing a claim that lacked merit, and for failing to properly investigate before filing. ECF No. 14. Specifically, the Court asked Plaintiff to provide the evidentiary basis for alleging in ¶ 12 of the complaint that Defendant "fail[ed] to pay Plaintiff's benefits relating [to] the cost to properly repair the Property, as well as, for all alternate living expenses and content-related losses." *Id.* ¶ 2. Plaintiff was ordered to include documentary evidence of any appraisal of the damage claimed, along with a description of the method of appraisal, the credentials of the appraiser and the date of inspection. *Id.* The Court warned Plaintiff's counsel of possible consequences, including revocation of *pro hac vice* status, liability for Defendant's attorney's fees, and referral to disciplinary authorities.

Plaintiff did not respond to the Court's order. Defendant's counsel submitted a declaration setting forth its litigation expenses. Decl. of Mark L. Antin in Resp. to Order to Show Cause ("Antin Decl. OSC"), ECF No. 17. Attached to the declaration was an itemized billing invoice to Defendant from its counsel, ECF No. 17-1, along with certified mail receipts indicating that Plaintiff's counsel had received a copy of the Court's opinion, Order of Dismissal and Order to Show Cause. ECF No. 17-2. Mr. Levasseur received a copy of these documents on November 24, 2014, and the Voss Law Firm received its copy on November 21, 2014. ECF No. 17-1. Defendant's counsel also stated in his declaration that he had not received any

4

communication of any kind from Plaintiff's counsel, or from Plaintiff, since the Court issued the Order. Antin Decl. OSC ¶ 4.

## STANDARD FOR RULE 11 SANCTIONS

An attorney who submits a complaint certifies that there is a reasonable basis in fact and law for the claims made, to the best of the attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. Fed. R. Civ. P. 11; *see also Napier v. Thirty or More Unidentified Federal Agents, etc.,* 855 F.2d 1080, 1090 (3d Cir. 1988). Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 618 (D.N.J. 2002) (citing *Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir. 1986)). The rule is intended to discourage the filing of frivolous, unsupported, or unreasonable claims. *Id.* The Third Circuit has written that "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 289 (3d Cir. 1991) (citations omitted), *cert. denied,* 502 U.S. 939 (1991). Reasonableness in the context of a Rule 11 inquiry has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." *Ford Motor Co.,* 930 F.2d at 289. Bad faith is not required for a Rule 11 violation, *see Martin v. Brown,* 63 F.3d 1252, 1264 (3d Cir. 1995), and thus there can be no "empty head, pure heart" justification for the filing of frivolous claims. *See Leuallen,* 180 F. Supp. 2d at 618 (quoting Fed. R. Civ. P. 11, adv. cmte. notes (1993)).

"On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) [of Rule 11] and directing an attorney, law firm, or party to

**NOT FOR PUBLICATION**

show cause as to why it has not violated subdivision (b) with respect thereto." Fed. R. Civ. P. 11(c)(1)(B). In the case of sanctions imposed *sua sponte* under Rule 11(c)(3), "[t]he party sought to be sanctioned is entitled to particularized notice including, at a minimum, 1) the fact that Rule 11 sanctions are under consideration, 2) the reasons why sanctions are under consideration, and 3) the form of sanctions under consideration." *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994). "A District Court has the authority and, indeed, the duty to examine allegations that an attorney appearing before the court has violated his moral and ethical responsibility and to fashion an appropriate remedy, if warranted." *Thomason v. Lehrer,* 183 F.R.D. 161, 170 (D.N.J. 1998), *aff'd,* 189 F.3d 465 (3d Cir.1999) (citations omitted). Courts have broad discretion "to control the conduct of those who appear before them" with "an arsenal of sanctions they can impose for unethical behavior." *Id.* (citations omitted). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

## STANDARD FOR REVOCATION OF *PRO HAC VICE* STATUS

Admission *pro hac vice* is a privilege, and may be revoked as a sanction for unethical behavior. *See Johnson v. Trueblood,* 629 F.2d 302, 304 (3d Cir. 1980); L. Civ. R. 101.1(c)(1) (*pro hac vice* admission is "in the discretion of the court"). The Third Circuit specified that "a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of *pro hac vice* status." *Johnson,* 629 F.2d at 304. "An attorney admitted *pro hac vice* in the courts of this State or the federal district court is subject to discipline, which may include a denial of future *pro hac vice* admissions by reason of

6

'countervailing considerations.'" *Arnold, White & Durkee, Professional Corp. v. Gotcha Covered, Inc.*, 714 A.2d 360, 366 (N.J. App. Div. 1998), *cert. denied*, 157 N.J. 543 (N.J. 1998) (citing *Nat'l Ass'n for the Advancement of Colored People v. State of New Jersey*, 312 N.J. Super. 552, 557-59, 563-65 (N.J. App. Div. 1998)). Courts have the power to suspend the privilege of *pro hac vice* admission for a certain period of time. *See In re Bailey*, 273 A.2d 563, 563 (N.J. 1971) (after attorney made improper statements to the media, issuing an order to show cause why respondent should not be barred from further practice *pro hac vice* in New Jersey, and sanctioning attorney with a one-year bar on admission). Before revocation, a court must give the attorney "a meaningful opportunity to respond to identified charges." *Johnson,* 629 F.2d at 303.

## ANALYSIS

Following the devastation of Hurricane Sandy, thousands of homeowners and businesses sued their insurers, claiming inadequate compensation under wind and flood insurance policies. The large volume of Hurricane Sandy cases presents a significant challenge to both state and federal courts, and frivolous actions obstruct the judiciary's efforts to resolve these matters justly. Rule 11 does not limit the number of claims an attorney may bring, so long as the attorney properly investigates and has a reasonable basis for filing each one of them. The Court is aware of no authority that relaxes Rule 11 when a natural disaster generates a large volume of litigation. *Cf. In re: FEMA Trailer Formaldehyde Products Liability Litigation*, 2012 WL 730457 (E.D.La. 2012) (finding attorney misbehavior in multi-district litigation after Hurricane Katrina). In the face of Defendant's allegation that Plaintiff had already received adequate compensation under the policy, Plaintiff did not respond. Because Plaintiff's counsel ignored the Court's Order to Show Cause, no proof is before the Court that counsel inspected the property, or conducted any investigation whatsoever, before or after filing the complaint.

**NOT FOR PUBLICATION**

Plaintiff's counsel initiated more than 250 actions that were filed in or removed to the district of New Jersey, with differently situated plaintiffs, diverse defendants and varied fact patterns. Yet the pleadings are practically identical. Filing such a large number of complaints within such a short time raises suspicion that they were prepared without investigation. Plaintiff's counsel has submitted no evidence to counter that suspicion. To the contrary, it is evident from the docket reports of many of these cases that Plaintiff's attorneys are not prosecuting their cases with diligence. Messrs. Levasseur, Hunziker and Voss have filed multiple Hurricane Sandy-related cases that were dismissed after they failed to respond to a defendant's motion. *See, e.g., Brusco v. Harleysville Ins. Co.*, Civ. No. 14-cv-914 (JEI/JS) (D.N.J. 2014); *Fandel v. Narragansett Bay Ins. Co.*, Civ. No. 14-431 (MAS/TJB) (D.N.J. 2014); ECF No. 12, *Rossetti v. Fidelity Nat. Ins. Co.*, Civ. No. 13-7550 (D.N.J. 2014) ("ORDER that the Plaintiff shall oppose or otherwise respond to Defendant's application to dismiss this matter for failure to prosecute in writing within 7 days of entry of this Order."); *id.* at ECF No. 14 (dismissing case after no response). Other dismissal motions are pending. *See, e.g.,* Def.'s Mot. to Dismiss, ECF No. 20, *Peter Blaso v. Alterra Excess & Surplus Ins. Co.*, Civ. No. 14-2574 (D.N.J. 2014) (requesting dismissal, as plaintiff's discovery is more than 120 days past due). They have failed to appear before the Court when ordered, and failed to respond to at least one other Order to Show Cause. *See* ECF No. 12, *Dringus v. NJM Ins. Grp.*, 13-cv-6693 (JAP/TJB) (D.N.J. 2014) ("Order to Show Cause Hearing held on 11/17/2014 why this matter should not be dismissed with prejudice. Plaintiff's attorney failed to appear. Report recommending dismissal to be entered.").

The detriment of mass-produced lawsuits is not simply to the Court and the public, but also to the parties themselves. Plaintiff's counsel's participation in this matter has been cursory,

**NOT FOR PUBLICATION**

depriving Plaintiff and its adversary of the diligence to which they are entitled. *See* New Jersey Rules of Professional Conduct 1.3. The amended complaint is devoid of factual details, and alleges damage to a residence when the insurance policy covers commercial property. Plaintiff's counsel ignored the provisions of the Court's case management order, denying Defendant an opportunity to inspect the property, despite repeated requests. Warned by the Magistrate Judge that continuing this behavior would lead to dismissal, counsel still did not comply. Plaintiff's counsel never facilitated the inspection of the property, and did not respond to their adversary's motion to dismiss. Faced with allegations of fraud, and ordered to show cause why the case was not frivolous, Plaintiff's counsel remained silent. There is no indication that Plaintiff ever provided evidence of loss, which a standing order in this district requires plaintiffs in Hurricane Sandy litigation to do automatically. Hurricane Sandy Case Management Order No. 1 § 4(a) (D.N.J. March 24, 2014), *available at* http://www.njd.uscourts.gov/sites/njd/files/SandyCaseManagementOrderNo1.pdf. Considering that the only documented damage to Plaintiff's property was to a fence, and the insurer alleged to have already paid the claim, Plaintiff's counsel's issuance of a settlement demand in the high six-figures suggests a lack of investigation.

The Court gave Plaintiff's counsel proper warning and a chance to explain its conduct. Plaintiff's counsel offered no explanation whatsoever. The Court now imposes sanctions.

As proposed in the Order to Show Cause, the Court revokes the *pro hac vice* admission of attorneys Voss and Hunziker, the Voss Law Center and the Voss Law Firm, P.C., in this district. These attorneys are directed to withdraw any pending applications. They are prohibited for applying for *pro hac vice* admission for a period of one year from the date of this opinion.

**NOT FOR PUBLICATION**

The Court has considered lesser sanctions, such as imposing a period of probation for Messrs. Voss and Hunziker where any further misconduct would automatically result in revocation of *pro hac vice* status. But Plaintiff's counsel's apathy when faced with a motion to dismiss, indifference to the Court's Order to Show Cause, noncompliance with earlier orders of this Court, disregard for this district's Hurricane Sandy Case Management Order, negligence in pursuing their client's claim, apparent lack of investigation before and after filing, issuance of a settlement demand with no factual relation to the case, stonewalling of their adversary's attempts to investigate, along with the apparent baselessness and potential fraudulence of the claim, and the continuing pattern of neglect before other judges in this district, justify a more serious response.

The Court will also award Defendant its litigation expenses. Plaintiff and Plaintiff's counsel shall be jointly and severally liable to Defendant for Defendant's attorney's fees and court costs, in the amount of $6,224.90. Within 30 days, Defendant shall make application to the Court for any fees associated with this motion, and any other litigation expenses not already submitted.

Attorneys Voss, Hunziker and other members of the Voss Law Center and Voss Law Firm, P.C., along with Mr. Levasseur, must docket a letter in each case pending in this district in which they are representing a party, attaching a copy of this opinion and the accompanying order. They must also immediately inform each client whose case is affected. The Court will refer Mr. Levasseur to the disciplinary committee to further inquire into whether he has represented his clients with the diligence they are owed.

"The court must keep in mind that the primary objective of any sanction is to preserve the integrity of the process, rather than to punish the offender." *Mruz v. Caring, Inc.*, 166 F. Supp.

**NOT FOR PUBLICATION**

2d 61, 68 (D.N.J. 2001). In order to be an effective deterrent, the sanction should signal that the cost of unfounded filings is greater than the potential reward. These sanctions will encourage future diligence on the part of these attorneys and others similarly situated.

## CONCLUSION

Under Fed. R. Civ. P. 11(c), and in accordance with its Order to Show Cause of November 13, 2014, the Court imposes sanctions on Plaintiff and its counsel, in the manner described above and in the accompanying order.

DATE: 13 January 2015

_____
Senior United States District Judge