NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIGHTHOUSE POINT MARINA & YACHT CLUB, LLC, | : |
| Plaintiff, | : **OPINION** |
| v. | : |
| INTERNATIONAL MARINE UNDERWRITERS, | : Civ. No. 14-2974 (WHW)(CLW) |
| Defendant. | : |

**Walls, Senior District Judge**

In this dispute over insurance coverage for property damage caused by Superstorm Sandy, the Court imposed sanctions under Fed. R. Civ. P. 11 on Plaintiff Lighthouse Point Marina & Yacht Club, LLC ("Lighthouse Point"), and its local and out-of-state counsel, for presenting a claim that lacked evidentiary basis. The Voss Law Firm P.C., Bill L. Voss and Scott G. Hunziker (the out-of-state attorneys for Plaintiff, collectively "the Voss Firm"), having retained independent counsel, now move under Local Rule 7.1(i) for reconsideration of the order imposing sanctions against them. As the Voss Firm contends that the judgment would have been different were it not for its excusable neglect, the Court also construes the motion as one for relief from a judgment under Federal Rule of Civil Procedure 60(b).

Audwin Levasseur, local counsel for Plaintiff, separately requests reconsideration of the Court's dismissal of the underlying action in November of 2014. ECF Nos. 15-16.

1

Defendant Atlantic Specialty Insurance Company ("Atlantic Specialty," improperly pled as International Marine Underwriters) requests an award of additional attorneys' fees, in accordance with the Court's Amended Opinion of January 20, 2015.

Decided without oral argument under Fed. R. Civ. P. 78, the Voss Firm's motion is denied, Mr. Levasseur's motion is denied, and Defendant's request for additional attorneys' fees is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Set forth more fully in the Court's earlier opinion, ECF No. 21, the facts are summarized briefly here. The amended complaint, filed in New Jersey Superior Court on April 11, 2013 and removed to this Court on May 9, 2013, alleges that Atlantic Specialty underpaid Lighthouse Point's insurance claim after Superstorm Sandy. ECF No. 1-1. The action was filed by Scott G. Hunziker, Esq. of the Voss Law Firm, P.C. of The Woodlands, Texas, Hunziker Aff. ¶¶ 2, 4, 6, ECF No. 23-2; Compl., ECF No. 1-1 at 7. Lighthouse Point had retained the firm in February of 2013. Ex. A to Hunziker Aff., ECF No. 33-1. The Voss Firm engaged Audwin Levasseur, Esq., of the firm Harbatkin & Levasseur, P.A., to serve as local counsel. Hunziker Aff. ¶ 6. Both Mr. Hunziker and Mr. Levasseur signed the complaint. ECF No. 1-1 at 7. The name of Bill L. Voss was also listed at the top of the complaint and below Mr. Hunziker's signature. *Id.* The Voss Firm then sent Atlantic Specialty a settlement demand, alleging property damage of $540,000, and attorneys' fees totaling $135,000. ECF No. 1-1 at 22.

After filing the complaint, the Voss Firm and Mr. Levasseur ignored their responsibilities in the litigation. They did not respond to Defendant's discovery requests, in violation of the Court-ordered case management schedule, the standing discovery order governing Superstorm Sandy cases in this district, *see* ECF No. 8, and the terms of the insurance policy. *See* ECF No.

13-2. Defendant moved to dismiss the complaint. ECF No. 13. Mr. Levasseur and the Voss Firm did not respond to the motion. The Court granted the motion and dismissed the complaint. ECF Nos. 15-16.

In its Answer and motion papers, Defendant alleged that the lawsuit was fraudulent. Answer ¶¶ 27-29, ECF No. 3; Def.'s Mot. to Dismiss, Def.'s Br. at 4, ECF No. 13. Atlantic Specialty's initial inspection after the storm found wind damage to two fences, and "[n]o damage to any of the 4 buildings." Antin Decl. MTD ¶ 7, Ex. C. It valued the claim at $1,612, and recommended a payment of $612, after applying a $1,000 deductible. *Id.* Defendant also pointed out that the Voss Firm and Mr. Levasseur had filed 250 lawsuits in New Jersey courts, almost identically worded, within a short period of time. *See* Ct.'s Op. at 1-2, ECF No. 21. Several of these cases were dismissed for lack of prosecution. *Id.* at 8.

Having received no information from the Voss Firm or Mr. Levasseur to contradict Defendant's allegation of fraud, the Court issued an Order to Show Cause on November 13, 2014, instructing Plaintiff to provide some evidentiary basis for its claim. ECF No. 14. The order warned that failure to satisfactorily respond could subject Plaintiff and its counsel to sanctions under Fed. R. Civ. P. 11. *Id.* The deadline for Plaintiff's response was December 15, 2014. *Id.* The order was entered on the district's CM/ECF system, and both Mr. Levasseur and the Voss Firm received a copy by certified mail. ECF No. 17-1. They did not respond.

The Court imposed sanctions on January 13, 2015, ECF Nos. 19-20, and amended its opinion and order on January 20, 2015. ECF Nos. 21-22. The Amended Order entered judgment against Lighthouse Point Marina & Yacht Club LLC, Audwin Levasseur, Bill L. Voss, and Scott G. Hunziker, jointly and severally, in the amount of $6,224.90, a sum which represents

Defendants' court costs and attorneys' fees to that date. ECF No. 22. It also prohibited Bill L. Voss from seeking *pro hac vice* admission before this judge for one year. *Id.*

The central rationale for sanctions was that Plaintiff had presented no factual basis for the complaint's allegation that the insurance payment was inadequate. Ct.'s Op. at 9, ECF No. 21. Although the Court considered lesser sanctions, it chose to award attorneys' fees to Defendant and prohibit the *pro hac vice* admission of Bill L. Voss because of:

> "Plaintiff's counsel's apathy when faced with a motion to dismiss, indifference to the Court's Order to Show Cause, noncompliance with earlier orders of this Court, disregard for this district's Hurricane Sandy Case Management Order, negligence in pursuing their client's claim, apparent lack of investigation before and after filing, issuance of a settlement demand with no factual relation to the case, stonewalling of their adversary's attempts to investigate . . . and the continuing pattern of neglect before other judges in this district."

*Id.* at 10.

On February 3, 2015, the Voss Firm moved for reconsideration of the sanctions against it alone, ECF No. 23, through its newly retained independent counsel. *See* Notice of Appearance by Michael M. DiCicco, Esq., ECF No. 24; Pl.'s Br. in Supp. of Mot. for Recons. 1, ECF No. 23-1 ("the Movants [the Voss Law Firm, P.C., Bill L. Voss and Scott G. Hunziker] submit that the Rule 11 sanctions entered against them should be withdrawn."). The Voss Firm argues that "the Amended Order if not reconsidered and amended in part will result in manifest injustice because the underlying conduct on which the sanctions are based constitutes excusable neglect." Pl.'s Br. 6. In support, the Voss Firm submits two reports from a private claims adjuster, dated April 18, 2013, detailing wind and flood damage to the Lighthouse Point Marina. Exs. A-B to Hunziker Aff. ECF No. 23-2. The reports state that the adjuster conducted an inspection of the loss, reviewed photos of damages and obtained verbal representations from the insured. *Id.*, Ex. B at

2. The adjuster estimated the actual cash value of the wind damage at $131,805.75, *id.,* Ex. A at 22; and the actual cash value of the flood damage at $70,388.92. *Id.,* Ex. B at 15.

Mr. Hunziker asserts in an affidavit that he "believed that the Harbatkin Firm was acting responsively to this Court and other Courts," *id.* ¶ 9, and, after the dismissal of this action, "believed wholeheartedly that Levasseur would respond to the Order to Show Cause." *Id.* ¶ 11. To demonstrate Mr. Levasseur's responsiveness and engagement with their joint cases, Mr. Hunziker submits a series of emails he exchanged with Mr. Levasseur. Mr. Hunziker's messages to Mr. Levasseur included the following: "I NEED TO HEAR FROM YOU" (October 15, 2014); "By the way, can you call [a client]. I have spoken to her a couple of times recently, and she is not happy about not hearing from you" (October 24, 2014); "When can we finally discuss the upcoming trials on these matters?" (October 28, 2014). *Id.,* Ex. C. Mr. Levasseur's responses to many of the messages, but not all, are included. *Id.* Mr. Hunziker also includes an email to Mr. Levasseur from December 22, 2014, attaching Defendant's counsel's letter of the same date, ECF No. 18, stressing that Plaintiff's counsel had not met its deadline to respond to the Order to Show Cause. Mr. Hunziker wrote, "Please call me on this one ASAP!!" *Id.,* Ex. D.

Mr. Levasseur filed a declaration with the Court on April 3, 2015, detailing his relationship with the Voss Firm. Decl. of Audwin Levasseur, ECF No. 34. In the penultimate paragraph, he "requests that the Court Amend its Order to dismiss Plaintiff's Complaint without prejudice. The extraordinary circumstances underlying the Plaintiff's case warrant that Plaintiff's access to the Court should not be permanently barred on account of the sins of its retained attorneys." *Id.* ¶ 62.

## STANDARD FOR RECONSIDERATION

Local Civil Rule 7.1(i) allows a party to move for reconsideration within 14 days after entry of judgment, and directs the moving party to submit "a brief setting forth the matter or controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i). The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

Reconsideration motions may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised before the entry of judgment. *See* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2810.1. Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence *not previously available* has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (emphasis added).

## STANDARD FOR RELIEF FROM A JUDGMENT UNDER RULE 60(B)

The Court also considers the Voss Firm's request for relief as arising under Rule 60(b). The rule states, in relevant part, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "Due to the overriding interest in the finality and repose of judgments, a Rule 60(b) motion is considered extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Katz v. Twp. of Westfall*, 287 Fed. App'x 985, 988 (3d Cir. 2008) (internal quotations and citations omitted).

Although other circumstances may be relevant, the Third Circuit has instructed courts to examine four factors when determining whether neglect was excusable: "(1) the danger of prejudice to the non-movant; (2) the length of the delay and the impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 319 (3d Cir. 2012) (citing *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "These factors, however, do not establish a mathematical formula; the determination is at bottom an equitable one." *Kanoff v. Better Life Renting Corp.*, 350 F. App'x 655, 657 (3d Cir. 2009) (citations omitted). The court continued:

> Though no one factor is dispositive, inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect. To summarize, "excusable neglect" describes situations where the court, after weighing the relevant considerations is satisfied that counsel has exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as the result of some minor neglect, compliance was not achieved.

*Id.* (citations omitted).

## STANDARD FOR RULE 11 SANCTIONS

An attorney who submits a complaint certifies that there is a reasonable basis in fact and law for the claims made, to the best of the attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. Fed. R. Civ. P. 11; *see also Napier v. Thirty or More Unidentified Federal Agents, etc.*, 855 F.2d 1080, 1090 (3d Cir. 1988). The Third Circuit has instructed that "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citations omitted), *cert. denied*, 502 U.S. 939 (1991). Reasonableness in the context of a Rule 11 inquiry has been defined as "an objective

knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." *Ford Motor Co.*, 930 F.2d at 289.

"On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) [of Rule 11] and directing an attorney, law firm, or party to show cause as to why it has not violated subdivision (b) with respect thereto." Fed. R. Civ. P. 11(c)(1)(B). In the case of sanctions imposed *sua sponte* under Rule 11(c)(3), "[t]he party sought to be sanctioned is entitled to particularized notice including, at a minimum, 1) the fact that Rule 11 sanctions are under consideration, 2) the reasons why sanctions are under consideration, and 3) the form of sanctions under consideration." *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994). "A District Court has the authority and, indeed, the duty to examine allegations that an attorney appearing before the court has violated his moral and ethical responsibility and to fashion an appropriate remedy, if warranted." *Thomason v. Lehrer*, 183 F.R.D. 161, 170 (D.N.J. 1998), *aff'd,* 189 F.3d 465 (3d Cir.1999) (citations omitted). Courts have broad discretion "to control the conduct of those who appear before them" with "an arsenal of sanctions they can impose for unethical behavior." *Id.* (citations omitted). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

## DISCUSSION

### I. The Voss Firm's Neglect Was Not Excusable

To evaluate the Voss Firm's claim that its failure to timely submit evidence constitutes "excusable neglect" under Rule 60(b), the Court applies the factors set out in *Pioneer*.

**(1) The Delay Did Not Significantly Prejudice the Defendant**

8

The Court dismissed the underlying case on the same day it issued the Order to Show Cause. ECF Nos. 14-16. Because the action against Atlantic Specialty had already been dismissed at the time the Voss Firm missed the deadline to respond to the Order to Show Cause, and the purpose of the order was to determine the Voss Firm's compliance with Rule 11, Atlantic Specialty faced no prejudice from the Voss Firm's delay. If the Court were to vacate sanctions, the detriment to Atlantic Specialty would consist only in the elimination of its opportunity to collect its attorneys' fees from the Voss Firm. This factor weighs in favor of a finding of excusable neglect.

**(2) The Voss Firm Has Delayed Responding to the Court's Orders Until Now**

The Order to Show Cause mandated that the Voss Firm provide a factual basis for the complaint's allegations within one month. The deadline passed without response. The firm was silent for an additional two months after that, despite knowing that the time to respond to the order had expired. Ex. D to Hunziker Decl. It took two more weeks after the Court had filed an amended order imposing sanctions, and three weeks after the original sanctions opinion, for the Voss Firm to submit this motion. Between filing the amended complaint and taking any action in the litigation (moving for reconsideration), the Voss Firm waited ten months. The Court dismissed the underlying action because the Voss Firm ignored repeated requests from their adversary to inspect the property, in violation of the Court-ordered discovery schedule. The pattern of delay here was extensive, weighing against a finding of excusable neglect.

**(3) The Voss Firm Could Have Responded Timely to the Order to Show Cause**

The Voss Firm's stated reason for the delay in responding to the Order to Show Cause is that it "wholeheartedly believed" its local counsel would respond on its behalf. This explanation lacks credibility.

9

First, the Voss Firm attempts to minimize its role in the litigation, stating that Mr. Levasseur was acting as lead counsel for all jointly filed Superstorm Sandy-related actions in New Jersey. Pl.'s Br. 3. The record shows that the Voss Firm was not simply a silent partner to Mr. Levasseur. The firm commissioned the appraiser's reports and had these documents in its possession throughout the litigation, removing any reliance on Mr. Levasseur to send them to the Court. There is no indication that the reports were ever shared with Mr. Levasseur, leaving uncertainty as to whether he would have been able to submit them. The Voss Firm also held itself out as the point of contact for settlement, sending Defendant a $675,000 settlement demand on its own letterhead.

To the extent that the Voss Firm had turned over day-to-day responsibility for the case to Mr. Levasseur, the Voss Firm had strong reason to doubt Mr. Levasseur would respond to the Order to Show Cause. To begin with, he failed to respond to the motion to dismiss in this case. By that point, he had established a pattern of disregarding cases. As early as June of 2014, judges in this district began to grant unopposed motions to dismiss actions filed by the Voss Firm and Mr. Levasseur. *Brusco v. Harleysville Ins. Co.*, No. CIV.A. 14-914 JEI/JS, 2014 WL 2916716 (D.N.J. June 26, 2014). By the time this Court issued an Order to Show Cause on November 13, 2014, ECF No. 14, at least five other cases had been dismissed after a lack of prosecution or other neglect. *See Truglia v. Selective Ins. Co.*, No. CIV.A. 13-7531 JAP, 2014 WL 5587978 (D.N.J. Oct. 31, 2014); *Castellucci v. Beers*, No. CIV.A. 13-6691 JAP, 2014 WL 5449863 (D.N.J. Oct. 27, 2014); *Vanore v. Narragansett Bay Ins. Co.*, No. CIV.A. 14-373 FLW, 2014 WL 4979691 (D.N.J. Oct. 3, 2014); *Bruno v. Narragansett Bay Ins. Co.*, No. CIV.A. 14-382 JAP, 2014 WL 4854607 (D.N.J. Sept. 30, 2014). Mr. Levasseur flouted another judge's Order to Show Cause a mere four days after this Court threatened sanctions. *See* ECF No. 12, *Dringus v.*

*NJM Ins. Grp.*, 13-cv-6693 (JAP/TJB) (D.N.J. 2014) ("Order to Show Cause Hearing held on 11/17/2014 why this matter should not be dismissed with prejudice. Plaintiff's attorney failed to appear. Report recommending dismissal to be entered."). The frustrated tone of Mr. Hunziker's emails to Mr. Levasseur ("I NEED TO HEAR FROM YOU") does not produce an impression of confidence. Most devastating for the Voss Firm's avowal that it trusted Mr. Levasseur to respond to the Order to Show Cause, Mr. Hunziker was aware on December 22, 2014 that Mr. Levasseur had failed to act by the Court's December 13th deadline. Ex. D to Hunziker Decl. Knowing this, the firm remained silent for the next six weeks, during which time the Court imposed sanctions.

At no point did it appear that Mr. Levasseur was deceiving the Voss Firm. Even if Mr. Levasseur failed to keep the Voss Firm informed about this case himself, the Voss Firm cannot blame him for its neglect of the communications it received directly from its adversary and the Court. Defendant's counsel attempted to contact the Voss Firm to arrange for an inspection of the property on no fewer than ten occasions, by both telephone and letter, and received no response. Antin Decl. ¶ 14, ECF No. 13-1. The Voss Firm received the Order to Show Cause of November 13, 2014 by certified mail. ECF No. 17-1. The order named them personally. *Id.* They had been in possession of their appraiser's reports since April of 2013. Hunziker Aff. ¶ 8. Their failure to respond to court orders was manifestly unreasonable, weighing heavily against finding their neglect excusable.

**(4) It Is Unclear Whether the Voss Firm Acted in Good Faith**

Black's Law Dictionary defines "good faith" as "[b]ehaving honestly and frankly, without any intent to defraud or to seek an unconscionable advantage." *Black's Law Dictionary* (10th ed. 2014). Whether the Voss Firm acted in good faith here is uncertain. The failure of the Voss Firm and Mr. Levasseur to prosecute this action is not a one-time instance of administrative

error or casual oversight; their neglect has been ongoing and pervasive in this district. In the months following this Court's Order to Show Cause, the Voss Firm and Mr. Levasseur failed to respond to dispositive motions in multiple other cases. *See Melillo v. Selective Ins. Co.,* No. CIV.A. 13-7542 FLW, 2015 WL 716646 (D.N.J. Feb. 19, 2015); *Hobson v. Am. Bankers Ins. of Florida*, No. CIV.A. 14-948 MLC, 2015 WL 668700 (D.N.J. Feb. 17, 2015); *Golden v. Beers*, No. CIV. 14-1468 NLH/KMW, 2015 WL 273649, at *1 n.2 (D.N.J. Jan. 21, 2015) (collecting cases where the Voss Firm and Mr. Levasseur failed to comply with court orders or otherwise prosecute actions); *Eun Ju Song v. Bank of Am., N.A.*, No. CIV. 2:14-3204 WJM, 2015 WL 248436 (D.N.J. Jan. 20, 2015). The weakness of Mr. Hunziker's excuse that he trusted Mr. Levasseur to respond, even after repeated and obvious instances of disregard, raises doubts as to the Voss Firm's good faith. This factor does not support the Voss Firm's motion.

**The *Pioneer* Factors Weigh Against Finding that the Voss Firm's Neglect was Excusable**

The Voss Firm's counsel concedes that "[t]he Movants seek to explain their conduct, not excuse it." Pl.'s Br. 8. The Court agrees: the explanation for the neglect does not excuse it. Although prejudice to the Defendant is modest, the Voss Firm's history of delay, its indifference to court orders throughout the district, and above all, the meritless nature of its excuse for the prolonged inattention, make relief under Rule 60(b) unavailable.

## II. Sanctions Against the Voss Firm Are Not Manifestly Unjust

The Voss Firm also argues that if the Court does not reverse its sanctions decision based on newly presented evidence, a manifest injustice arises.

"Manifest injustice" is not well-defined in case law. *See Oneida Indian Nation of New York v. Cnty. of Oneida*, 214 F.R.D. 83, 99 (N.D.N.Y. 2003). More definite is the rule that, "[w]here evidence is not newly discovered, a party may not submit that evidence in support of a

12

motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *see also Gibson v. Mueller*, No. CIV. 09-6486-NLH-JS, 2012 WL 1079128, at *12 (D.N.J. Mar. 29, 2012) ("[t]here is a strong policy against entertaining reconsideration motions based on evidence that was readily available at the time that the original motion was heard.") (internal citations omitted). "The court will not, at a late date, consider evidence, which could and should have been submitted earlier. The court is bound not to consider such new materials, lest the strictures of the reconsideration rule erode entirely." *Damiano v. Sony Music Entertainment*, 975 F. Supp. 623, 635 (D.N.J. 1997); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251-52 (3d Cir. 2010) (affirming the denial of a motion for reconsideration when "[t]he stated aim of the Plaintiffs' motion was to submit the very evidence the District Court had found they had failed to present in their [original] motion.").

The rule against considering previously available evidence has limited flexibility. Although "courts often take a dim view of issues raised for the first time in post-judgment motions," the Third Circuit has held that when evidence is "so fundamental" to the disposition of the issue, then it is "not consistent with the wise exercise of discretion for the District Court to [decline] even to consider it" as proof of manifest injustice. *Max's Seafood Cafe*, 176 F.3d at 678. The *Max's Seafood Cafe* court found manifest injustice in a district court's refusal to consider newly introduced evidence when, in light of a party's reasonable belief that the opposition's argument lacked merit, the party did not introduce contrary evidence at the time of the original motion. *Id.* In other words, the moving party demonstrated that (1) the newly presented evidence was dispositive, and (2) the party's failure to timely present available evidence was reasonable under the circumstances. *See id.* ("[i]n the circumstances of this case, it

is not surprising that [the movant] did not produce [the additional evidence] at the [original] hearing.").

*Max's Seafood Cafe* differs from another Third Circuit case, *DeLong Corp. v. Raymond Int'l, Inc.*, where the movant failed to timely present facts contradictory to the court's decision, and this failure was unreasonable:

> "[The moving party] does not assert that the evidentiary material which it later sought to introduce on the motion for reargument was unavailable or unknown to it at the time of the original hearing. Nor does such reason appear in the record. . . . If these affidavits and exhibits were to be advanced to meet the motion they should have been advanced then. If time were needed to gather and present them, an adjournment should have been requested. It is important to observe that these affidavits and exhibits were in the possession of [plaintiff] or available to it without seeking discovery from [defendant]."

622 F.3d 1135, 1140 (3d Cir. 1980) (internal citation omitted), *overruled on other grounds by Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981) (en banc).

Here the Voss Firm does not argue that the Court erred in imposing sanctions under Rule 11 based on the record at the time. It does not contest that there had been no evidentiary support for the factual contentions of the complaint, despite the Court's order to produce such evidence by a certain date under penalty of specific sanctions. *See* ECF No. 21. Instead, the Voss Firm now submits documents to provide the factual basis the Court had requested. The appraiser's reports suggest that Lighthouse Point suffered more damage during Superstorm Sandy than the $1,612 its insurer adjusted for damage to a fence. *Compare* Exs. A-B to Hunziker Aff. *with* Antin Decl. in Supp. of Mot. to Dismiss ¶ 8. Defendant has not challenged the reports' authenticity. *See* Def.'s Mem. in Opp. to Mot. for Recons., ECF No. 27.

The exhibits provide some support for the complaint's factual allegations. But the question remains: why did the Voss Firm withhold the documents until now? Considering the general rule against untimely submissions, and the rarity of granting a motion for

14

reconsideration, the Court cannot find manifest injustice when the failure to timely submit evidence that the Voss Firm possessed throughout the litigation was inexcusable. The lack of a reasonable basis for failing to produce the evidence in a timely fashion, especially in spite of an Order to Show Cause, distinguishes this case from *Max's Seafood Cafe*, and makes it more akin to *DeLong*. Finding "manifest injustice" in *Max's Seafood Cafe*, the Third Circuit opined that the prior omission of dispositive evidence was "not surprising" under the circumstances. 176 F.3d at 678. No such circumstances are present here.

"The court must keep in mind that the primary objective of any sanction is to preserve the integrity of the process, rather than to punish the offender." *Mruz v. Caring, Inc.*, 166 F. Supp. 2d 61, 68 (D.N.J. 2001). Under these circumstances, with a meritless excuse from the Voss Firm as to why it ignored the litigation for so long, combined with its inattention to multiple other cases in the district, the sanctions on the Voss Firm continue to serve a valid objective: encouraging the diligence which attorneys owe to the courts, their adversaries and their clients.

In its earlier opinion, the Court explained the rationale for barring Bill L. Voss from applying for *pro hac vice* status before this judge. ECF No. 21. After learning that Scott G. Hunziker is not admitted to practice before this Court, *see* Hunziker Aff. ¶ 2, the Court will amend its previous order to prohibit Mr. Hunziker from applying for *pro hac vice* admission before this judge for one year from the date of this opinion. Mr. Levasseur is likewise prohibited from appearing before this judge on matters filed within one year of the date of this opinion.

### III. Mr. Levasseur's Motion for Reconsideration Is Denied

The Court considers Mr. Levasseur's request to reconsider its dismissal of the complaint under both Local Rule 7.1(i) and Rule 60(b). Local Rule 7.1(i) requires a motion for

reconsideration to be filed within 14 days; Mr. Levasseur makes this request nearly five months after dismissal. Local Rule 7.1(i) cannot provide relief here.

Mr. Levasseur's request for relief under Rule 60(b) is also unavailing. Nothing in Mr. Levasseur's submissions demonstrates mistake, inadvertence, surprise, or excusable neglect. Allowing Lighthouse Point to reopen the case would create a significant possibility of prejudice to the Defendant: two-and-a-half years have passed since the property was allegedly damaged, making investigation more difficult. Mr. Levasseur's request, unaccompanied by any citation to case law, comes almost five months after dismissal and more than ten weeks after sanctions were imposed, a delay that has no explanation apart from counsel's inattention. The pattern of neglect that made the Court doubt the Voss Firm's good faith is no less attributable to Mr. Levasseur, who signed the complaint and was at all relevant times counsel of record in this matter.

Mr. Levasseur's argument that his client's action "should not be permanently barred on account of the sins of its retained attorneys" is contrary to Supreme Court precedent. On several occasions, the Supreme Court has "held that clients must be held accountable for the acts and omissions of their attorneys." *See Pioneer*, 507 U.S. at 396. It reasoned that a party

> voluntarily chose this attorney as [its] representative in the action, and . . . cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id.* at 397. Following this reasoning, the Court held that a client could be penalized for counsel's late filing of a tax return, *U.S. v. Boyle,* 469 U.S. 241 (1985), and that a client would have to suffer the consequences of dismissal of its lawsuit because of its attorney's failure to attend a pretrial conference. *Link v. Wabash R. Co.,* 370 U.S. 626 (1962). An order of dismissal is an appropriate consequence of Plaintiff's attorneys' lack of diligence. *See id.*; *Poulis v. State Farm*

NOT FOR PUBLICATION

*Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Lighthouse Point must suffer this consequence.

## IV. Judgment against Lighthouse Point Is Vacated

A court may reconsider its prior decisions *sua sponte* so long as it explains the reasoning behind its decision and takes the appropriate steps to ensure that the parties are not prejudiced by reliance on its prior ruling. *See DeFranco v. Wolfe,* 387 F. App'x 147, 155-56 (3d Cir. 2010) (applying *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir. 1997)).

The consequences to a party from attorney negligence that the Supreme Court addressed in *Pioneer*, *Boyle* and *Link* did not include sanctions. The Court is aware of no authority that requires a client to bear the brunt of a sanctions award when the sanctionable conduct is the attorney's alone. Presented now with a more detailed record than when it made its initial sanctions ruling, the Court is aware of no evidence suggesting that the Voss Firm ever gave Lighthouse Point an opportunity to review the pleading, informed it that the case had been dismissed, or warned that an order threatening sanctions was pending. The appraisal reports suggest that Lighthouse Point had a colorable basis for contesting its insurance payment. Given the lack of information communicated to Lighthouse Point by its attorneys, the colorable factual basis for the complaint, and the ability of the attorneys to timely submit the appraisal reports on their own, Lighthouse Point is so distant from the sanctionable conduct that holding it responsible would be manifestly unjust. The judgment against Lighthouse Point is vacated.

## V. Defendant's Request for Additional Attorneys' Fees Is Granted

Defendant requests additional attorneys' fees, in accordance with the Court's Amended Opinion of January 20, 2015. Ct.'s Op. at 10, ECF No. 21 ("[w]ithin 30 days, Defendant shall

make application to the Court for any fees associated with this motion, and any other litigation expenses not already submitted"); *see* Decl. of Mark Antin, ECF No. 25. Defendant's counsel has provided satisfactory proof of an additional $676.08 in fees; Defendant's request is granted. The judgment against the Voss Firm and Mr. Levasseur now totals $6,901.70.

## CONCLUSION

The Voss Firm's motion is denied. Mr. Levasseur's motion is denied. Judgment against Lighthouse Point is vacated. Defendant's request for additional attorneys' fees is granted. An appropriate order follows.

DATE: 30 April 2015

William H. Walls
Senior United States District Court Judge